NORTHCUTT, Judge.
Genel Altimeaux challenges the Florida Unemployment Appeals Commission’s (UAC) order dismissing his appeal as untimely. As we will explain, the confusing posture of this case raises our concern that Altimeaux did not receive procedural due process. We reverse the UAC’s order and remand for an evidentiary hearing.
Altimeaux was born in Haiti and speaks little English. On Friday, September 26, 1997, he was employed at Ocean Construction. As paychecks were being distributed at the end of the day, a dispute arose between the employer and some of the Haitian workers about the amount of their pay. According to the employer, one worker stated that none of the Haitians would work for Ocean Construction again. Altimeaux denied hearing anyone make such a statement. When he arrived for work Monday morning, he claimed the employer told him “there was no work for Haitians.”
Altimeaux applied for unemployment compensation benefits. The claims adjuster approved the benefits, which began on October 15, 1997. Ocean Construction appealed that decision, and a hearing was scheduled for November 17, 1997. That hearing was postponed because the appeals referee was ill. On May 1, 1998, a new notice was sent setting the hearing for May 12, 1998. Altimeaux contends that he never received the notice, and he did not attend the hearing. The hearing went forward, and on May 27, 1998, the referee issued an order determining that Alti-meaux was not entitled to unemployment benefits because he had resigned from his job without good cause attributable to the employer. Altimeaux claims he did not know he had been disqualified because he did not receive a copy of the referee’s order.
At some point, Altimeaux did get a notice of overpayment of employment compensation benefits. Apparently he first believed this notice referred to an earlier time when he had become unemployed, had been overpaid, but had repaid the overage. The record is not clear on this point. In any event, on September 17, 1998, he sent a letter to “The Division of Unemployment Compensation” asking that his case be “reopened and rescheduled to your next available date because I never received notice that a hearing was set for my unemployment benefits.” The letter also mentioned the overpayment notice.
At this point the case became a procedural nightmare. The UAC treated Alti-meaux’s September 17 letter as a notice of appeal of the referee’s May 27 disqualification order, and on October 22, 1998, issued an order to show cause why the appeal should not be dismissed as untimely filed. Meanwhile, the benefit payment control section of the Division of Employment Security thought the same September 17 letter was a request for a hearing on the overpayment notice, and it scheduled a *672 telephone hearing for October 28, 1998. The notice of the telephone hearing stated that the issues set for hearing included “whether an appeal ... was filed by a party entitled to notice of the determination within twenty days after the mailing of the notice ... [and] whether the claimant received benefits to which the claimant was not entitled.... ”
Altimeaux appeared at the hearing on October 28 with two friends to assist him because of his limited command of English. He apparently believed that the hearing was his opportunity to respond to the UAC’s order to show cause. He explained he had missed the May 12 hearing because he had not received the notice of hearing and had not timely appealed because he had not received a copy of the disqualification order. The referee explained that the present hearing was to address the overpayment issue, and that he should file a notice of appeal challenging the May 27 disqualification order. Of course, the UAC had already treated Altimeaux’s September 17 letter as a notice of appeal of that order.
In her order dated October 30, 1998, the referee made findings of fact that “[t]he claimant did not receive the notice of hearing [for the May 12 hearing] and did not appear for the hearing. A decision was issued disqualifying the claimant from the week ending September 27, 1997 and until he earned $3,322 on May 27 1998. The claimant did not receive the decision or any other information from the Division until September 1998, when he received notice of the overpayment.” She further determined that the case was on appeal to the UAC, but that the overpayment would stand until and unless the UAC reversed on the merits.
On November 18, 1998, the UAC issued an order dismissing Altimeaux’s appeal because he had failed to respond to its show cause order of October 22. On December 17, 1998, a friend of Altimeaux’s faxed a letter to the UAC on his behalf, explaining the confusing nature of this case, and asking that the UAC reconsider its dismissal. The UAC responded that it had no authority to do so. We treated the December 17 letter as an appeal to this court of the UAC’s dismissal.
Section 443.151(4)(b)3., Florida Statutes (1997), requires that an appeal of a referee’s decision be initiated within twenty days of the date the notice of decision is mailed to the parties. Florida courts have, however, carved out a due process exception to this statutory requirement. Generally, when a claimant asserts that he has not received notice of the referee’s determination or notice of the hearing, courts have remanded for an evi-dentiary hearing to determine whether the claimant received notice of the hearing in time to appear, or notice of the determination in time to appeal. See Koppelman v. Unemployment Appeals Comm’n, 626 So.2d 322 (Fla. 1st DCA 1993); Robinson v. Morrison, Inc., 501 So.2d 1323 (Fla. 4th DCA 1986). If the evidence does not rebut the claimant’s contention that he did not receive notice of the hearing, the case is returned to the appeals referee to give the claimant the opportunity to present his side.
As noted above, in this case the UAC sent Altimeaux an order to show cause why his appeal should not be dismissed. In its brief, the UAC correctly points out that this court has held this procedure, i.e., “an order to show cause requiring a written response from the claimant, generally would be adequate to provide procedural due process where there is an allegation of an untimely appeal.” Apolinar v. Florida Unemployment Appeals Comm’n, 710 So.2d 199, 200 (Fla. 2d DCA 1998) (emphasis supplied). But in Apolinar, we found that the facts warranted a different result. Apolinar, who spoke limited English, filed an ambiguous response to the order to show cause that could have been interpreted to mean she had not received the referee’s decision. We noted that procedural due process concerns required that we err on the side of caution and we ordered that *673 an evidentiary hearing be conducted on Apolinar’s allegation.
Similarly, in this case the facts warrant an evidentiary hearing. Altimeaux has already convinced a referee, albeit not one from the UAC, that he never received notice of the rescheduled hearing or a copy of the referee’s decision. He thought the hearing before the benefit payment control section referee was his opportunity to respond the UAC’s order to show cause, and he did respond. Given the fact that his one letter of September 17 was treated as two notices of appeal, and that he received orders and notices from two different sections, we can understand his confusion. As we did in Apolinar, we must err on the side of caution. We remand for an eviden-tiary hearing in which Altimeaux may again present his evidence that he did not receive notice. If the referee determines he did not get notice of the rescheduled hearing, the case must be returned to the appeals referee so that Altimeaux can present his side of the case. See Koppelman, 626 So.2d at 323.
Altimeaux has asked us to hold that the October 28 hearing satisfied the above-discussed requirement of an eviden-tiary hearing, and that the UAC should be bound by the referee’s findings of fact. The UAC did not have the opportunity to present its evidence, if any, at that hearing. Accordingly, we hold that an eviden-tiary hearing is still necessary.
Reversed and remanded.
CAMPBELL, A.C.J., and STRINGER, J., Concur.